UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-60-GWU

JAMES G. HOWARD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

James Howard brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

09-60 James G. Howard

> impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

09-60  James G. Howard

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

09-60  James G. Howard

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

09-60  James G. Howard

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Howard, a 25-year-old former lawn care worker with a "limited" education, suffered from impairments related to borderline intelligence.  (Tr. 19, 23-24).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of work at all exertional levels.  (Tr. 21, 23).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 24-25).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 24).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Martha Goss included a capacity for all exertional levels restricted from a full range by such non-exertional limitations as (1) a restriction to entry-level work requiring only simple, one-two step procedures; (2) an inability to perform work requiring frequent changes

09-60  James G. Howard

in work routines; (3) an inability to perform work requiring detailed or complex problem solving, independent planning and setting of goals; and (4) a limitation to jobs in object-oriented environments with only occasional interaction with co-workers, supervisors, and the general public. (Tr. 286-287). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 287). Therefore, assuming that the vocational factors considered by Goss fairly characterized Howard's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to Howard's physical status, he was treated by Dr. Dana Edwards in January of 2006 for complaints of left inguinal pain. (Tr. 134). A recent CT scan of the abdomen was negative. (Id.). Palpation did not reveal a hernia. (Tr. 135). Physical restrictions were not identified by the physician. (Tr. 134-146).

In June of 2006, Howard was seen at the Anne Wasson Health Clinic with complaints of pain in the right side, back and front.[1] (Tr. 206). Straight leg raising was negative and no neurological deficit was observed. (Id.). In June of 2007, the claimant underwent a KUB following complaints of abdominal pain in the right lower quadrant. (Tr. 225). The KUB revealed no evidence of mechanical bowel

---

[1]The plaintiff indicated that he worked a great deal with his right hand and did a lot of bending up and down in performing the mechanical work he did. (Tr. 206). Thus, the claimant would appear to have been involved in significant work activity in June of 2007, well after his alleged onset date of October 26, 2005. (Tr. 55).

obstruction.  (Id.).  In mid-July of 2007, the plaintiff reported testicular pain.  (Tr. 205).  He was noted to be well appearing, well nourished and in no acute distress.  (Id.).  His weight was reported to be 165 pounds.  (Id.).  In late July of 2007, the claimant complained of having difficulty swallowing solid foods.  (Tr. 203).  Weight loss was denied.  (Id.).  A consultation for dysphagia was arranged.  (Tr. 204).  In September of 2007, an EGD was negative.  (Tr. 202).  Physical examination revealed Howard's blood pressure was normal, his chest was clear, his abdomen normal and his extremities were also within normal limits.  (Id.).  In view of the normal physical findings, a psychiatric consultation was advised.  (Id.).  In November of 2007, the plaintiff returned to the clinic with reports of constipation.  (Tr. 200).  Physical examination revealed the lungs to be clear and his cardiovascular status regular.  (Id.).  He was reported to be doing fine in his overall condition at this time.  (Id.).

 Howard was seen at Gastroenterology Associates of Hazard in November of 2007.  His weight was reported to be 166 pounds.  (Tr. 218).  Laboratory studies revealed a normal EGD.  (Id.).  The cervical esophagus was normal and the CBC was within normal limits.  (Id.).  Physical examinations of the head, eyes, neck and extremities were normal.  (Id.).  The chest was clear and cardiac condition regular.  (Id.).  Examination of the abdomen was essentially negative.  (Id.).  A diagnostic

09-60  James G. Howard

impression of intermittent dysphagia, panic attacks, cardiac murmur, mild constipation and irritable bowel syndrome was recorded. (Id.).

In December of 2007, Howard returned to the Anne Wasson Health Clinic. His appetite was reported to be good but he was afraid to eat solid foods. (Tr. 198). The plaintiff weighed 167 pounds. (Id.). Anxiety and constipation were noted. (Id.). When last seen in January of 2008, the Clinic staff indicated that his constipation was well-controlled by medication. (Tr. 197). The claimant's cardiovascular status was regular. (Id.). His weight was recorded at 168 pounds. (Tr. 194).

The ALJ properly concluded that Howard did not suffer from a "severe" physical impairment. Despite recorded problems with constipation, dysphagia, a heart murmur and irritable bowel syndrome, no treating or examining source ever identified any specific physical limitations. The constipation was noted to be controlled by medication and no physical basis was found for the dysphagia. Despite claims by the plaintiff of experiencing a 30 to 50 pound weight loss (Tr. 187, 268), his medical records failed to support these claims. Therefore, the ALJ dealt properly with the evidence of record relating to Howard's physical condition.

The ALJ also dealt properly with the evidence of record relating to Howard's mental condition. Howard sought treatment for his mental problems at the Kentucky River Comprehensive Care Center. The plaintiff was diagnosed as suffering from a somatoform disorder. (Tr. 191). However, the center staff did not identify specific

09-60  James G. Howard

mental limitations. (Tr. 179-191). The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Thus, this opinion does not indicate the existence of more severe mental problems than those found by the ALJ.

Psychologist Ingram Baldwin examined Howard in September of 2006 and diagnosed malingering. (Tr. 132). The plaintiff was estimated to have upper borderline to low average intelligence. (Id.). Baldwin opined that the claimant would be able to make personal, social and occupational adjustments. (Id.). His ability to carry out instructions and adapt to work stresses was noted to be intact. (Id.). The ALJ's findings were consistent with this opinion.

Howard was examined by Psychologist Melissa Couch in March of 2008. Couch also diagnosed malingering and borderline to low average intelligence. (Tr. 234). The examiner noted that the plaintiff would be able to understand, remember and carry out simple instructions. (Id.). His concentration and persistence were good. (Id.). The claimant could complete tasks in a timely fashion. (Id.). Howard was said to have good social skills and could relate adequately to co-workers, peers, and supervisors. (Id.). He would be able to cope with work pressures and stresses in an adequate manner. (Id.). No limitation was found in interacting with the general public. (Id.). He could adapt to changes and meet deadlines and production goals. (Id.). The examiner indicated on a Mental Medical Source

09-60  James G. Howard

Statement of Ability to do Work-Related Activities Form that the plaintiff would have no mental restrictions. (Tr. 235-236). The ALJ's findings were compatible with this opinion.

Psychologist Vincent Dummer examined Howard and opined that he would be limited in his capacity to get along with others and would have some difficulty tolerating work stresses. (Tr. 242). The extensive mental limitations of the hypothetical question were essentially consistent with this opinion.

Psychologists Ilze Sillers and Jan Jacobson each reviewed the record. Sillers opined that Howard did not suffer from a "severe" mental impairment. (Tr. 147). Jacobson did find some mental impairment. (Tr. 165). The reviewer opined that the plaintiff would be "moderately" limited in handling detailed instructions and in responding appropriately to changes in the work setting. (Tr. 161-162). Neither reviewer suggests the existence of more severe mental restriction than found by the ALJ and, so, they support the administrative decision.

Howard argues that the ALJ erred in concluding that he did not meet the requirements of § 12.05(C) of the Listing of Impairments concerning mental impairments. This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

09-60  James G. Howard

20 C.F.R., Part 404, Subpart P, App. 1, § 12.05(C).  The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence supports onset of the impairment before age 22."  20 C.F.R., Part, 404, Subpart P, App. 1, § 12.05.  Thus, to satisfy the requirements of § 12.05(C), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

    Howard underwent intelligence testing on three occasions during the processing of his claim.  Baldwin reported a Verbal IQ of 63, a Performance IQ score of 56, and a Full Scale IQ score of 56.  (Tr. 131).  However, the examiner did not believe these scores to be valid as a result of malingering and, so, this testing does not assist the plaintiff's claim. (Id.).  Crouch also performed intelligence testing and obtained a Verbal IQ score of 61, a Performance IQ score of 58 and a Full Scale IQ score of 56.  (Tr. 232).  These were also deemed not to be valid due to a lack of effort on the part of the claimant.  (Id.).  As previously noted, both of these examiners ultimately diagnosed malingering.  Finally, Dummer administered IQ testing and he noted a Verbal IQ score of 65, a Performance IQ score of 67 and a Full Scale IQ score of 64.  (Tr. 242).  Dummer did consider his scores to be valid. (Id.).  Howard asserts that these scores support his disability claim.

09-60  James G. Howard

The ALJ rejected the validity the IQ scores obtained by Dummer based on the fact that the two other examiners obtained similar scores and each found them invalid due to malingering and because even Dummer indicated that Howard's effort had been somewhat limited during testing.  (Tr. 20, 242).  The plaintiff argues that the ALJ erred in using the opinions of the examiners who estimated his intellectual functioning level rather obtaining valid intelligence testing results to discredit Dummer's valid test scores.  Of course, the reason these examiners failed to obtain valid IQ scores was due to the claimant's own lack of effort.  Nevertheless, the ALJ would have been well advised to obtain the testimony of a medical advisor who had reviewed the entire record on this issue.  However, even if the ALJ erred in invalidating the IQ scores of Dummer, the claimant still does not meet the requirements of § 12.05(C).

Howard must also demonstrate that he suffered from another mental or physical impairment in addition to mild mental retardation.  With regard to the plaintiff's physical condition, the court has already determined that the ALJ properly concluded that none of these conditions, including dysphagia, constipation, the heart murmur and irritable bowel syndrome, were "severe" impairments imposing work-related restrictions on the claimant.  Howard argues that Dummer diagnosed a generalized anxiety disorder and avoidant personality disorder in addition to mild mental retardation.  Thus, his opinion provides the additional mental impairment to

09-60  James G. Howard

meet the Listing. However, neither Baldwin nor Couch thought that the plaintiff suffered from another discrete mental impairment besides reduced intellectual functioning. (Tr. 129-133, 230-237). The ALJ could rely upon the opinions of these equally-placed examining sources on this separate and discrete issue even if he could not use them to invalidate Dummer's IQ testing.[2] Furthermore, the treating staff at Kentucky River did not identify specific mental limitations. Therefore, the court finds that the requirements of § 12.05(C) were not met.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 10th day of November, 2009.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**

---

[2] Dummer was on staff at Kentucky River but Howard does not argue that he was a treating source nor does the record indicate that the psychologist treated him. (Tr. 179-191, 240-242).